FILED
2022 MAR 23 AM 11:16
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RANDA A., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING ALJ DECISION <br><br><br> Case No. 2:20-cv-00731-CMR <br><br> Magistrate Judge Cecilia M. Romero |

Plaintiff Randa A. (Plaintiff), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). After careful review of the entire record, the parties' briefs, and arguments presented at a hearing held on December 22, 2022, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and is therefore AFFIRMED.

## I.   STANDARD OF REVIEW

The scope of the court's review of the Commissioner's final decision is specific and narrow. As the Supreme court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id.* at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Under this deferential standard,

this court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The court's inquiry, "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157.

## II. BACKGROUND

Plaintiff was 35 years old on her amended disability onset date of July 1, 2016 (original date: April 15, 2017) (Tr. 12). Plaintiff filed an application for DIB on January 29, 2018, alleging disability due to bipolar I and II, schizoaffective disorder, depression, posttraumatic stress disorder (PTSD), and stroke related to adverse reaction to birth control (*see* Tr. 31, 71, 207, 193).

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. 14-21). *See* 20 C.F.R. § 404.1520(a)(4). In a decision dated November 8, 2019, the ALJ determined Plaintiff had severe impairments of Bipolar Disorder and Anxiety Disorder (Tr. 15). The ALJ found at step three that Plaintiff's mental impairments did not meet or medically equal a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings) (Tr. 15). The ALJ next found that Plaintiff had the residual functional capacity (RFC) to perform medium work except she could only make simple work-related judgments and decisions; understand, remember, and carry out only short and simple instructions; have no more than occasional changes in a routine work setting; have no more than occasional superficial contact with the public; and have no more than occasional contact with coworkers or supervisors (Tr. 16). *See id.* § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."). At step five, the ALJ found that this RFC would allow Plaintiff to perform other work existing in significant numbers in the national economy (Tr. 20–21). The ALJ thus

concluded that Plaintiff was not disabled (Tr. 21). *See id*. § 404.1520(a)(4)(v). The Appeals Council then denied Plaintiff's request for review (Tr. 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a).[1] This appeal followed.

### III. DISCUSSION

#### A. The ALJ reasonably assessed Plaintiff's RFC.

The RFC assessment must address the claimant's reported symptoms (previously called the "credibility" assessment).[2] *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304; *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined."). Plaintiff bore the burden of showing that limitations should be included in her RFC assessment. *See Howard v. Barnhart*, 379 F.3d 945, 948–49 (10th Cir. 2004). The court will address each of Plaintiff's arguments relating to her RFC in turn.

##### 1. The ALJ reasonably found that Plaintiff's reported symptoms were inconsistent with other evidence.

Plaintiff's primary argument on appeal is that the ALJ failed to follow the proper procedures under Social Security Ruling (SSR) 18-3p (Pl. Br. at 4–12). Specifically, Plaintiff argues that the ALJ did not follow SSR 18-3p when considering her noncompliance with prescribed treatment. Plaintiff misapprehends the governing law. An ALJ may consider a disability claimant's failure to follow prescribed treatment in two distinct ways. The first (and

---

[1] Code of Federal Regulations (C.F.R.) citations are to the 2020 edition, which was in effect at the time of the ALJ's May 2020 decision.

[2] Effective March 28, 2016, SSR 16-3p eliminated the term "credibility" from the agency's sub-regulatory policy. 2017 WL 5180304. However, the regulation governing symptom analysis, 20 C.F.R. § 404.1529, has not changed, and cases interpreting it remain relevant.

most common) method is as part of the symptom evaluation, which is governed by 20 C.F.R. § 404.1529. As further explained in SSR 16-3p, "if the [claimant] fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of [her] symptoms are inconsistent with the overall evidence of record." 2017 WL 5180304, at *9. The second (and less common) method that an ALJ may consider a claimant's noncompliance with treatment is governed by a different regulation, 20 C.F.R. § 404.1530. Under that regulation, an ALJ may deny a claimant's application for disability benefits after finding the claimant otherwise disabled if the claimant does not follow prescribed treatment and has no good reason for her noncompliance. *Id.*(b); *see* SSR 18-3p, 2018 WL 4945641, at *1 (explaining that the first condition for deciding whether the failure to follow prescribed treatment may apply to a claim is "[t]he individual is otherwise entitled to disability . . . benefits").

Plaintiff argues that the ALJ considered her noncompliance with prescribed treatment using the second method under 20 C.F.R. § 404.1530 and SSR 18-3p (*see* Pl. Br. 4–12). However, the ALJ did not reference that regulation or SSR (*see* Tr. 12–21). Rather, the ALJ considered Plaintiff's noncompliance under the first method as part of the symptom evaluation pursuant to 20 C.F.R. § 404.1529 and SSR 16-3p (*see* Tr. 17). The ALJ found that Plaintiff's reports of debilitating mental symptoms were inconsistent with her noncompliance with prescribed treatment (Tr. 17, 19). For example, when Plaintiff went to the emergency room in August 2017, she was "tak[ing] no med[ications] at all," despite the fact that providers had prescribed medication and emphasized its importance after her April 2017 hospitalization (Tr. 411; Tr. 336). Plaintiff herself recognized the connection between stopping medication and going into a manic phase; she said, "I only go into manic episodes when I don't have medication" (Tr. 522). Plaintiff's parents also admitted that she "ha[d] a long history of

4

noncompliance" (Tr. 336). In these circumstances, the ALJ was not required to go through the SSR 18-3p analysis. *See Payne v. Saul*, No. 19-CV-1206-SCD, 2020 WL 4015609, at *5 (E.D. Wis. July 16, 2020); *Ayala v. Saul*, No. 7:19-cv-00024-O-BP, 2020 WL 2487051, at *6 (N.D. Tex. Feb. 14, 2020).[3]

While the Tenth Circuit has not yet addressed SSR 18-3p, it explained in *Qualls v. Apfel*, 206 F.3d 1368, 1372–73 (10th Cir. 2000), that an ALJ is not required to make the findings from 20 C.F.R. § 404.1530 (which are discussed in *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), and *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985)) in the context of the symptom evaluation. Thus, the ALJ was not required to make additional findings before discounting Plaintiff's symptoms due to her noncompliance. *See Johnson v. Colvin*, 640 F. App'x 770, 774 (10th Cir. 2016) ("[W]hen, as here, noncompliance with prescribed treatment is invoked not as independent basis for denying disability but only as a factor diminishing the credibility of a claimant's allegations of the severity of symptoms prompting the treatment, the ALJ need not also find the forgone treatment would have restored the claimant's ability to work."); *see also S.D. v. Saul,* No. 19-4048-SAC, 2020 WL 774098, at *8 (D. Kan. Feb. 18, 2020) ("Although the ALJ did not make the findings required by 20 C.F.R. § 404.1530 for denying or stopping benefits for noncompliance with prescribed treatment, this was not necessary here because the ALJ did not deny plaintiff's applications for this reason. Instead, the ALJ considered plaintiff's noncompliance as a factor which was inconsistent with plaintiff's

---

[3] Moreover, SSR 18-3p "only applies where the ALJ finds that the claimant would be otherwise entitled to disability benefits, which is not the case here." *Scharmer v. Comm'r of Soc. Sec.*, No. 1:18-cv-00872, 2020 WL 1861869, at *7 (W.D. Mich. Apr. 14, 2020). "Because the ALJ here never determined that [Plaintiff] would be disabled but for [her] noncompliance, SSR 18-3p does not apply." *Payne*, 2020 WL 4015609, at *5; *see also Autumn G. v. Kijakazi*, No. 20-1206-JWL, 2021 WL 3488394, at *6 (D. Kan. Aug. 9, 2021) ("Here, the ALJ found even when Plaintiff is not following prescribed treatment Plaintiff is not disabled and, therefore, the ALJ was not required to perform the failure to follow prescribed treatment analysis [under SSR 18-3p].").

5

statements regarding the severity of her symptoms." (citing *Qualls*, 206 F.3d at 1372–73)).

Plaintiff also contends that her noncompliance was due to her bipolar disorder (and resultant disordered thinking), arguing that the nature of the condition made her noncompliant. Yet it appears that her manic phases occurred when she stopped taking medication, not the other way around (*see* Tr. 335, 411, 522). The evidence does not suggest that Plaintiff's noncompliance was the result of her mental impairment. *See Adams v. Colvin*, 553 F. App'x 811, 815–16 (10th Cir. 2014) (rejecting the claimant's argument that the ALJ should not have considered noncompliance with treatment as part of the symptom evaluation because he had bipolar disorder and antisocial personality disorder; the court found that the claimant "fail[ed] to cite any evidence that his use of alcohol and marijuana and his intermittent pursuit of mental-health treatment were the result of his mental illnesses").

Regardless, the ALJ provided other reasons for finding Plaintiff's reported symptoms inconsistent with other evidence, including the efficacy of Plaintiff's treatment and objective medical evidence. The effectiveness of a disability claimant's treatment is relevant to the symptom evaluation. 20 C.F.R. § 404.1529(c)(3)(iv). The fact that a claimant's impairment is well-controlled by treatment supports an ALJ's conclusion that she is not disabled. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995). Indeed, a claimant's admission that medication relieves even some of her symptoms supports an ALJ's finding that the claimant's impairments are not disabling. *See White v. Barnhart*, 287 F.3d 903, 909–10 (10th Cir. 2002). Here, the ALJ found that Plaintiff's prescribed medication "effectively controlled the manic component of her bipolar disorder" (Tr. 17). The ALJ cited specific evidence supporting his finding, including Plaintiff's 2018 report that she was able to "chuckle at the tv if there is a humorous part and before she couldn't so she is experiencing improvement" (Tr. 606); APRN Ms. Foster's 2018

6

note that Plaintiff's moods were stable, though she had more depressive symptoms (Tr. 779); and Plaintiff's 2019 report that she felt "calmer and more in control" and had experienced no manic episodes since 2017 (Tr. 714). The ALJ thus reasonably found that this evidence of effective treatment was inconsistent with Plaintiff's reports of unrelenting disabling symptoms.

The consistency (or inconsistency) of a claimant's reported symptoms with objective medical evidence is also relevant to the symptom evaluation. 20 C.F.R. § 404.1529(c)(4). "[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms . . . ." SSR 16-3p, 2017 WL 5180304, at *5. Here, the ALJ considered Plaintiff's "completely unremarkable" mental status examinations for the first six months of 2018 (Tr. 18; *see* Tr. 605, 616, 619, 622, 625, 628, 676, 679, 682, 685 (all showing normal mental status examination findings)). Although there was one visit in August 2018 where Plaintiff had a flat affect after changing medication (Tr. 688), the ALJ recognized that "[t]he most recent treatment records . . . continue[d] to demonstrate stable mood and fairly well managed depression" (Tr. 18; *see* Tr. 688, 691, 694, 702, 716, 724, 727, 730 (normal mental status examination findings from between August 2018 and July 2019)). Based on these normal mental status findings, the ALJ reasonably found that Plaintiff's reported symptoms were inconsistent with objective medical evidence.

In sum, the ALJ gave three well-supported reasons for concluding that Plaintiff's reported symptoms were not as severe as she claimed: (1) Plaintiff's noncompliance with prescribed treatment, (2) the efficacy of Plaintiff's treatment, and (3) objective medical evidence (Tr. 17-19). Because more than a "mere scintilla" of evidence supports the ALJ's findings, the court affirms the ALJ's decision. *See Biestek*, 139 S. Ct. at 1154.

## 2. The ALJ properly considered the medical sources in the record.

Plaintiff argues that the ALJ improperly disregarded the opinions from multiple treating and examining medical source in the record, including APRN Ms. Foster, Dr. Kronholz, Dr. Bowen, and Valley Behavioral Health therapists (ECF 20 at 14–25). Because Plaintiff filed her disability application on or after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations (*see* Tr. 12 (noting application date), 18-19). *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The court will address each medical source identified by Plaintiff.

### a) APRN Ms. Foster

Ms. Foster proffered several medical opinions indicating that Plaintiff was extremely limited (Tr. 631–35, 770–72, 784–88). Consistent with the agency's revised regulations, the ALJ first articulated his consideration of the persuasiveness of Ms. Foster's medical opinions, finding them not persuasive (Tr. 18). *See* 20 C.F.R. § 404.1520c(b).[4] Second, the ALJ articulated his consideration of the supportability factor, finding that Ms. Foster's opinions were supported by some explanation but were not presented in vocationally relevant terms, were unclear which of the opined limitations were based on her observations versus Plaintiff's self-reports alone, and were inconsistent with Ms. Foster's treatment notes (Tr. 18). *See id.* (c)(1) (explaining that the supportability factor looks to the objective medical evidence and supporting explanations provided by the opining source). Third, the ALJ articulated his consideration of the consistency factor, finding that Ms. Foster's opinions were inconsistent with the ALJ's observation of

---

[4] The ALJ evaluated the persuasiveness of all of Ms. Foster's opinions together, consistent with the agency's revised regulations. *See* 20 C.F.R. § 404.1520c(a).

Plaintiff at the hearing and "with most of the treatment notes since late 2017" (Tr. 18). *See id.* (c)(2) (explaining that the consistency factor looks to evidence from sources other than the opining source).

The ALJ thus made all of the findings required by the agency's revised regulations. He articulated his consideration of the persuasiveness of Ms. Foster's opinions, finding them not persuasive (Tr. 18). While Plaintiff points to case law suggesting that the ALJ was required to provide further articulation, those cases were interpreting 20 C.F.R. § 404.1527, not the governing regulation in this case, 20 C.F.R. § 404.1520c. To the extent that the cited cases required further discussion, their holdings have been abrogated by the revised regulation. *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless they exceed[] the [Commissioner's] authority [or] are arbitrary and capricious." (internal quotation marks and citation omitted)).

### b) Examining psychologist Dr. Kronholz

Dr. Kronholz opined that Plaintiff's mental condition "would interfere with her ability to perform tasks, remember and follow directions, [and] interact effectively with coworkers or supervisors" (Tr. 499). Consistent with the agency's revised regulations, the ALJ first articulated his consideration of the persuasiveness of Dr. Kronholz's opinion, finding it "of little value," i.e., not persuasive (Tr. 19). *See* 20 C.F.R. § 404.1520c(b). Second, the ALJ articulated his consideration of the supportability factor, finding that Dr. Kronholz's opinion was "supported by the exam," but the doctor "did not indicate the degree of limitation in any of these areas of functioning" (Tr. 19). *See id.* (c)(1). Dr. Kronholz opined that Plaintiff's mental impairments "would interfere" with Plaintiff's workplace abilities, but she did not explain how those impairments would interfere (*see* Tr. 499). Third, the ALJ articulated his consideration of the

9

consistency factor, finding that Dr. Kronholz's opinion was "generally consistent with the other medical evidence of record, including [Plaintiff's] treatment history" (Tr. 19). *See id.* (c)(2). That is, the ALJ agreed that the evidence showed that Plaintiff's mental condition would interfere with her ability to perform tasks, remember and follow directions, and interact effectively with coworkers or supervisors.

Given the vagueness of Dr. Kronholz's opinion, the ALJ reasonably limited Plaintiff to simple work-related judgments and decisions; understanding, remembering, and carrying out only short and simple instructions; having no more than occasional changes in a routine work setting; having no more than occasional superficial contact with the public; and having no more than occasional contact with coworkers or supervisors (Tr. 16). Indeed, Dr. Kronholz's vague opinion appears consistent with the ALJ's ultimate RFC finding, rendering any error irrelevant here. *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (under the prior regulations, finding that the ALJ's failure to assign a specific weight to an opinion was harmless where the opinion was generally consistent with the ALJ's RFC finding).

c) **Examining psychologist Dr. Bowen**

Plaintiff argues that the ALJ did not "discuss or even mention another psychological evaluation conducted by" Dr. Bowen in November 2017 (Pl. Br. 22; *see* Tr. 520–26). This is incorrect. Dr. Bowen's examination is contained within Exhibit 8F of the record, pages 4 to 10 (*see* Tr. 520–26). The ALJ cited Exhibit 8F/6 (i.e., Tr. 522) as part of his consideration of Plaintiff's noncompliance (Tr. 17). The ALJ thus did not ignore Dr. Bowen's examination. Moreover, Dr. Bowen did not render a medical opinion. She recorded examination findings, i.e., objective medical evidence (Tr. 520–21). *See* 20 C.F.R. § 404.1513(a)(1). She recorded her diagnosis of bipolar I disorder and her recommendation that Plaintiff needed regular medication

management and therapy, i.e., "[o]ther medical evidence" (Tr. 523, 525). *See id.* (a)(3). An ALJ need only articulate his consideration of medical opinions, not objective medical evidence or other medical evidence. *See id.* § 404.1520c(b).

To the extent that Plaintiff argues the ALJ reversibly erred by not further discussing Dr. Bowen's examination, her argument fails. An ALJ "is not required to discuss every piece of evidence" in the record before him. *Wall*, 561 F.3d at 1067 (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007)). "Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Dr. Bowen's examination findings were not uncontroverted; they were inconsistent with the many normal mental status findings discussed by the ALJ and Plaintiff's significant improvement with treatment subsequent to Dr. Bowen's examination. For similar reasons, Dr. Bowen's one-time examination findings were not significantly probative of Plaintiff's condition during the entire relevant period. The ALJ mentioned Dr. Bowen's examination, and no further discussion is required.[5]

In sum, consistent with the revised regulations, for each medical opinion and prior administrative medical finding, the ALJ (1) articulated his consideration of its persuasiveness, (2) articulated his consideration of the supportability factor, and (3) articulated his consideration of the consistency factor (*see* Tr. 18-19). *See* 20 C.F.R. § 404.1520c(b). The ALJ thus fully

---

[5] The court rejects Plaintiff's arguments relating to Valley Behavioral Health therapists for similar reasons as Dr. Bowen. As the party asserting error, Plaintiff bears the burden of proving that the evidence the ALJ did not discuss was both (1) uncontroverted and (2) significantly probative. *See Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014). She does neither here. Due to Plaintiff's many normal mental status findings, the therapists' treatment notes regarding Plaintiff's reported symptoms were neither uncontroverted nor significantly probative.

complied with the agency's revised regulations when evaluating the medical opinions and prior administrative medical findings.

### 3. There was no inconsistency between the ALJ's step-three findings and the RFC assessment.

Plaintiff argues that the ALJ made inconsistent findings at steps three and five regarding her limitations in interacting with others (ECF 20 at 12–14). At step three of the sequential evaluation process, as part of the "special technique" for evaluating mental impairments, the ALJ found that Plaintiff had marked limitations in the "Paragraph B" criterion of interacting with others (Tr. 15). *See* 20 C.F.R. § 404.1520a. As the ALJ correctly observed, the "limitations identified in the 'paragraph B criteria'" are by definition *not* an assessment of Plaintiff's RFC (Tr. 16). *See* SSR 96-8p, 1996 WL 374184, at *4 ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). Within the RFC assessment, the ALJ limited Plaintiff to occasional superficial contact with the public and occasional contact with coworkers and supervisors (Tr. 16). Contrary to Plaintiff's argument, there was no inconsistency between these findings.

Consistent with SSR 96-8p, the Tenth Circuit has repeatedly held that an ALJ is not bound by his step-three findings when fashioning a claimant's RFC. *See DeFalco-Miller v. Colvin*, 520 F. App'x 741, 748 & n.5 (10th Cir. 2013); *see also Beasley v. Colvin*, 520 F. App'x 748, 754 & n.3 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis"); *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) ("[W]e conclude that the ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a

work-related functional limitation for the purposes of the RFC assessment in this case."). Thus, the ALJ's finding that Plaintiff had marked limitation in the Paragraph B criterion of interacting with others did not mandate any specific findings within the RFC assessment.

Here, substantial evidence supports the ALJ's finding that Plaintiff could occasionally interact with others. *See Biestek*, 139 S. Ct. at 1153. The ALJ cited Plaintiff's ability to complete 23 hours of community service (Tr. 18; *see* Tr. 606 (reporting she did her community service at a food bank)). The ALJ also discussed Plaintiff's self-reported ability to spend time with a friend and go out with her parents (Tr. 18; *see* Tr. 728). The ALJ found persuasive the State agency psychological consultants' prior administrative medical findings, which indicated that Plaintiff could do work "in which interpersonal contact is restricted," not prohibited (Tr. 19; *see* Tr. 78, 95). The specific examples cited by the ALJ are representative of other evidence in the record. *See Putnam*, 789 F. App'x at 698. Plaintiff was able to socialize with family and friends at her father's birthday party, which she estimated 140 people attended (Tr. 617, 620). She also reported going to a movie and out for ice cream (Tr. 683). Such evidence provides substantial evidentiary support for the ALJ's conclusion that, while Plaintiff's ability to interact with others was limited, it was not disabling. The court recognizes that "the record contains support for both the notion that [Plaintiff] has extreme deficiencies . . . and the notion that [her] . . . limitations are not that severe." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). In cases like this, where the evidence is mixed, "[t]he ALJ was entitled to resolve such evidentiary conflicts and did so." *Id*. (citation omitted). The court does not find harmful legal error. [6]

---

[6] Plaintiff finally argues that remand for an immediate award of benefits is the appropriate remedy (Pl. Br. 26). The Supreme Court has clarified that courts are required, "'except in rare circumstances, . . . to remand to the agency for additional investigation or explanation.'" *I.N.S. v. Orlando-Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Payment is appropriate only when additional fact-finding would serve no purpose and the record "fully supports" that Plaintiff is disabled "as a matter of law." *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989). That is not the case here.

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 23 March 2022.

_____
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah